UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMMY MAX C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | No. EDCV 20-1484 AGR <br><br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on July 27, 2020. The parties filed a Joint Stipulation that addressed the disputed issues. The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner for the period beginning March 1, 2019 and remands for further proceedings consistent with this opinion.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.)

# I.

# **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits on September 27, 2017, and alleged an onset date of February 21, 2015. Administrative Record ("AR") 15. The application was denied initially and on reconsideration. AR 15, 63, 77. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On September 3, 2019, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 32-51. On September 17, 2019, the ALJ issued a decision denying benefits. AR 12-27. On June 4, 2020, the Appeals Council denied review. AR 1-5. This action followed.

# II.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirement through December 31, 2020. AR 17. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of the right knee with meniscus tear and right femur fracture. AR 17.

The ALJ found that Plaintiff had the residual functional capacity to perform medium work except that he can frequently push; pull; climb ramps, stairs, ladders, ropes and scaffolds; balance; stoop (bend at the waist); kneel; crouch (bend at the knees); crawl; walk on uneven terrain; and work at heights. AR 19. The ALJ concluded that Plaintiff was unable to perform his past relevant work. AR 25. There are, however, jobs that exist in significant numbers in the national economy that Plaintiff can perform such as kitchen helper, counter supply worker, equipment washer. AR 26-27.

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C. Residual Functional Capacity

The residual functional capacity ("RFC") assessment measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471 (1986). The RFC is a determination of "'the most [the claimant] can still do despite [the claimant's] limitations.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (citation omitted). The RFC assessment must be supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff contends that the ALJ improperly considered the treating medical records in favor of the opinions of the examining physician and state agency physicians. When considering a medical source opinion, an ALJ evaluates several factors: (1) supportability; (2) consistency with other evidence; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The first two factors are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citations omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Plaintiff has not identified any treating records that contain functional assessments that contradict the opinions of the examining physician, who examined Plaintiff twice, during the period prior to March 2019. Medical records indicate that Plaintiff suffered a fracture of the right femur at work on February 20, 2015. He underwent surgery and was discharged on February 26, 2015 with instructions to allow weightbearing as tolerated with the right knee brace in full extension. AR 247-48, 259, 264-65. Plaintiff subsequently reported pain with walking and activity. He had a moderate right knee extension lag despite physical therapy. An MRI dated May 21, 2015 indicated longitudinal horizontal oblique tear of the posterior horn of the medial

meniscus, edema in the proximal tibia, signal alteration over the lateral meniscus, severe tendinosis in the patellar tendon, intrasubstance tear of the proximal to mid portion of the patellar tendon, and moderate interstitial tear of the distal quadriceps tendon on a background of moderate tendinosis. On July 17, 2015, Plaintiff underwent right knee arthroscopy, partial medial meniscectomy, and patellar tendon debridement. AR 302, 309-10, 440-42. On July 28, 2015, Plaintiff denied any significant right knee pain and continued his home exercise program. He had minimal extensor lag and quadriceps strength was 4+/5. AR 381.

On August 27, 2015, Plaintiff had no extensor lag and quadriceps strength was 5/5. There was intermittent aching. AR 383. On September 15, 2015, Plaintiff reported pain and swelling after walking more than three miles, and difficulty with steep inclines and stairs. AR 495. On December 17, 2015, Plaintiff reported right anterior knee pain made worse with squatting or activity such as carrying dogfood. There was some fullness in the patellar tendon and mild tenderness. AR 403-04. Dr. Luna's recommendation for a work hardening program to allow Plaintiff to return to his previous occupation was not approved. AR 404, 406. In 2016, Plaintiff reported right anterior knee pain with squatting, kneeling and activity such as going up and down stairs, yard work, and prolonged standing/walking. His physical examination remained largely unchanged. AR 406, 408-09, 411-13, 417-18, 420; *see also* AR 444 (x-ray dated 3/14/16). On June 7, 2016, Dr. Luna suspected patellofemoral articular injury. AR 412. Plaintiff continued to have pain along the anterolateral aspect of the right knee, crepitus feeling over the lateral aspect of the right knee with motion of the knee and walking, and crepitus under the right kneecap. He had pain with squatting, kneeling, and prolonged standing/walking. AR 279, 324. An MRI on June 22, 2016 indicated a longitudinal horizontal oblique tear of the posterior horn of the medial meniscus; a similar tear of the posterior horn of the lateral meniscus; evidence of cystic degeneration of the ACL; severe patellar tendinosis; moderate cartilage loss in the medial greater than lateral femoral tibial compartments; and high grade cartilage fissure of the medial facet of the

patella. AR 280, 414, 445-47. Examination on January 16, 2017 indicated full range of motion, severe patellofemoral crepitus with active motion of the right knee, and crepitus over the lateral right knee iliotibial directly over the IT band. AR 279, 324. Conservative treatment had been unsuccessful. AR 280. Plaintiff was diagnosed with symptomatic painful hardware, lateral distal femur with iliotibial band friction syndrome; right patellofemoral arthritis; and right medial meniscus tear. On January 16, 2017, Plaintiff underwent removal of two distal interlocking screws subfascial of the right distal femur, right knee arthroscopy with patellofemoral joint debridement, arthroscopic right knee partial medial meniscectomy, and intraoperative fluoroscopy. AR 293. He was discharged with weightbearing as tolerated in the right leg and gentle range of motion. AR 295.

On January 31, 2017, Plaintiff reported improvement in overall right knee pain. His gait was mildly antalgic on the right. His right knee had full range of motion. AR 327. He was prescribed physical therapy for six weeks for strengthening and range of motion. AR 328. On March 22, 2017, Plaintiff had not gone to physical therapy. His gait was nonantalgic. His right knee had full range of motion with no extension lag, no crepitus, and quadriceps strength of 5/5. He was prescribed physical therapy for right knee strengthening and range of motion. AR 329-30. During physical therapy, Plaintiff reported pain of 3/10 at worst at 0/10 at best. He had excellent static and dynamic right knee stability. Range of motion had minimal flexion limitation. Quadriceps strength was 4+/5. AR 369-70. On May 4, 2017, Plaintiff had completed physical therapy and reported significant improvement and more activity. His gait was nonantalgic. His right knee had full range of motion, was stable to varus and valgus stress, and had mild patellofemoral crepitus. Plaintiff was able to perform a full squat and a partial single leg squat on the right. AR 331. Plaintiff was doing well with improvement in right knee strength and pain, and was approaching maximum medical improvement. AR 332.

On June 2, 2017, Plaintiff had undergone a qualified medical examination for workers compensation purposes. On June 21, 2017, Plaintiff reported some

intermittent popping in the anterior aspect of the right knee.  His gait was nonantalgic. His right knee had full range of motion with moderate patellofemoral crepitus, and was stable to varus and valgus stress.  He was told to continue his home exercise program. AR 333-34.  On July 28, 2017, an x-ray of the right knee indicated minimal chondrocalcinosis and no new findings.  AR 346.

On October 4, 2017, Dr. Halbridge provided a supplemental orthopedic qualified medical evaluation report.  AR 574-77.  Dr. Halbridge noted Plaintiff's subjective allegations of slight to moderate right knee pain, increased with descending stairs, and dependence on others for shopping.  Dr. Halbridge concluded that Plaintiff had a 7% whole person impairment.  AR 575-76.  On November 22, 2017, Plaintiff reported that, after doing some work around the house, he had pain in the right knee as well as pain in the right hip down to the right knee.  On examination, Plaintiff's gait was antalgic on the right.  He had supple range of motion of the right hip and knee, and his right knee was stable to varus and valgus stress.  He had mild tenderness along the iliotibial (IT) band and moderate patellofemoral crepitus.  AR 335.  On January 13, 2018, Plaintiff had normal posture and gait.  AR 542, 544.

On January 26, 2018, Dr. Karamlou performed an internal medicine evaluation. AR 548-52.  Plaintiff reported that it was painful to walk and he was using over-the-counter pain medication.  AR 548.  Plaintiff had normal gait and balance.  He was able to generate 80 pounds of force with his right hand and 75 pounds of force with his left hand.  AR 549.  Examination of his back and legs revealed normal findings.  AR 550. Plaintiff had normal muscle bulk and tone without atrophy.  Motor strength was 5/5 in all extremities.  AR 551.  Dr. Karamlou concluded that Plaintiff was capable of lifting/ carrying 50 pounds occasionally and 25 pounds frequently.  He could sit/stand/walk six hours in an eight-hour workday.  He could frequently push, pull, perform postural activities, walk on uneven terrain, climb ladders and work at heights.  AR 552-53.

On March 20, 2018, Plaintiff reported pain in the distal medial right thigh.  His gait was mildly antalgic on the right.  His right hip and knee had supple range of motion, and

his knee was stable to varus and valgus stress. He had mild tenderness at the IT band and moderate patellofemoral crepitus. AR 337. Dr. Luna advised Plaintiff to continue his home exercise program and take over-the-counter NSAIDs for pain. AR 338.

On September 14, 2018, Plaintiff underwent another internal medicine evaluation by Dr. Karamlou. AR 554-58. Plaintiff reported inflammation of the right knee, which was painful with walking, and used over-the-counter pain medication. AR 554. Plaintiff had normal gait and balance. He generated 98 pounds of force with his right hand and 72 pounds of force with his left hand. AR 555. Plaintiff's right knee had inflammation and reduced flexion of 110/130 degrees. AR 556. He had normal muscle bulk and tone, and motor strength of 5/5. AR 557. Dr. Karamlou's assessment of Plaintiff's functional capacity remained unchanged. AR 557-58. A state agency physician reviewed the record and agreed with Dr. Karamlou's conclusions. AR 72-74.

On January 22, 2019, Plaintiff reported intermittent numbness and aching pain in the medial and plantar aspects of the right foot. His had very mild antalgic gait on the right side. He had difficulty performing a partial squat. His right knee had full range of motion, was stable to varus and valgus stress, and had moderate to severe patellofemoral crepitus. There was some tenderness along the anterior and medial distal thigh, and some numbness along the medial arch and plantar aspect of the right foot. His right ankle and foot had normal range of motion. AR 560. Dr. Luna requested x-rays and a nerve conduction study of the right lower extremity. AR 561. As the ALJ noted, an x-ray of the right knee on March 11, 2019 indicated no significant change in the extent of mild narrowing of the medial knee joint compartment or chondrocalcinosis. AR 564. An x-ray of the right femur indicated no significant change in the mild degenerative arthritic changes or extent of chondrocalcinosis in the knee joint. AR 565.

In March 2019, however, the medical record indicates that Plaintiff's symptoms materially worsened. On March 28, 2019, Dr. Schweller, as a qualified medical examiner, performed a neurological examination. AR 567-70. Plaintiff complained of right knee pain and instability with pain shooting to his right thigh after standing and

moving for 35 minutes. AR 568. Plaintiff had grip strength of 82 pounds with the right hand and 80 pounds with the left hand. Motor strength was 5/5 in all extremities. Plaintiff had some crepitus along the right lateral and medial knee, and some left knee tenderness. AR 568-69. Dr. Schweller's impression was internal derangement of the right knee and right plantar fasciitis. He intended to prepare a supplemental report after doing an EMG and nerve conduction study.[4] AR 569. At the September 2019 hearing, Plaintiff testified that he could lift about 20 pounds and described activities consistent with that weight estimate. AR 41.[5] Plaintiff testified that, for about the past eight months, he had tried to lift more but his leg buckled. AR 44. The ALJ discounted this testimony due to the lack of corroborating evidence. AR 22. However, Plaintiff's testimony was consistent with his complaint to Dr. Schweller six months earlier in March 2019.

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler*, 775 F.3d at 1099. When there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. It appears that Plaintiff would be entitled to benefits as of March 1, 2019, when he is limited to light work, under 20 C.F.R. § 404.1568(d)(4). Nevertheless, the court will remand the matter for the Commissioner to determine whether it must further develop the record by obtaining Dr. Schweller's supplemental report, if any, prior to awarding benefits as of March 1, 2019.

---

[4] The record does not contain a supplemental report.

[5] Plaintiff testified at the hearing that he then had trouble doing yard work such as weed whacking for more than 1½ hours. AR 39, 45.

# IV.
# **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed for the period beginning March 1, 2019 and remanded for further proceedings consistent with this opinion.

DATED: July 14, 2021

_____
ALICIA G. ROSENBERG
United States Magistrate Judge